# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ESQUER,<br><br>                  Plaintiff,<br><br>v.<br><br>EDUCATION MANAGEMENT CORPORATION, and THE ART INSTITUTE OF CALIFORNIA-SAN DIEGO,<br><br>                  Defendants. | Case No. 17-cv-01240-BAS-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO COMPEL ARBITRATION [ECF No. 8];**<br><br>**(2) STAYING ACTION; AND**<br><br>**(3) ADMINISTRATIVELY CLOSING THE ACTION** |

      Pending before the Court is Defendants Education Management Corporation ("EMC") and the Art Institute of California-San Diego's ("AICSD") (together "Defendants") Motion to Compel Individual Arbitration and to Dismiss or Stay Proceedings Pending Arbitration. (ECF No. 8-1.) Plaintiff Steven Esquer has opposed the motion (ECF No. 10) and Defendants have responded (ECF No. 11). For the reasons set forth below, the Court grants Defendants' motion to compel individual arbitration.

## I. BACKGROUND

### A. Relevant Factual Background

      On December 20, 2013, Plaintiff Steven Esquer applied for admission to Defendant AICSD to pursue a B.S. in Graphic and Web Design. (ECF No. 1 ¶¶19,

20). AICSD is an educational institution offering bachelor and associated degrees and is a subsidiary of Defendant Education Management Corporation, a publicly-traded corporation based in Pittsburg, Pennsylvania. (*Id.* ¶¶15−16.) At the time he applied to AICSD, Esquer completed several forms, including an Enrollment Agreement. (*Id.* ¶21.)

The first page of the Enrollment Agreement Esquer signed contained the following language under a section titled "Student's Agreement": "I understand that this Agreement becomes a legally binding document after I sign it and it is accepted by The Art Institute of California. . ." (ECF No. 8-3, Declaration of Abdo Antun ("Antun Decl."), Ex. 1.) Immediately preceding the student signature line was a provision reading: "I understand that this is a legally binding contract. My signature below certifies that I have read, understood, and agreed to my rights and responsibilities. . ." (*Id.*) Page 2 of the Enrollment Agreement contained the following provisions:

> **ARBITRATION**
>
> Every student and The Art Institute agrees that any dispute or claim between the student and The Art Institution (or any company affiliated with The Art Institute . . . ) arising out of or relating to a student's enrollment or attendance at The Art Institute whether such dispute arises before, during, or after the student's attendance and whether the dispute is based on contract, tort, statute, or otherwise, shall be, at the student's or The Art Institute's election, submitted to and resolved by individual binding arbitration pursuant to the terms described herein. . . .
>
> Either party may elect to pursue arbitration upon written notice to the other party. . . .If a party elects to pursue arbitration, it should initiate such proceedings with JAMS, which will serve as the arbitration administrator pursuant to its rules of procedure. . . This provision does not preclude the parties from mutually agreeing to an alternate arbitration forum or administrator in a particular circumstance. If either party wishes to propose such an alternate forum or administrator, it should do within twenty (20) days of its receipt of the other party's intent to arbitrate.

> IF EITHER A STUDENT OR THE ART INSTITUTE CHOOSES ARBITRATION . . . . THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING.
>
> . . . Upon a student's written request, The Art Institute will pay the filing fees charged by the arbitration administrator, up to a maximum of $3,500 per claim. Each party will bear the expense of its own attorneys, experts and witnesses, regardless of which party prevails, unless applicable law gives a right to recover any of those fees from the other party . . . the arbitrator may award sanctions in the form of fees and expenses reasonably incurred by the other party (including arbitration administration fees, arbitrators' fees, and attorney, expert and witness fees), to the extent such fees and expenses could be imposed under Rule 11 of the Federal Civil Rules of Civil Procedure.
>
> The Federal Arbitration Act (FAA), 9 U.S.C. §§1, et seq., shall govern this arbitration provision. . . (Antun Decl. Ex. 1.)

The Enrollment Agreement was signed by both Plaintiff and an official of AICSD. (*Id.*)

### B. Procedural Background

Esquer brought suit against AICSD and EMC on June 19, 2017, alleging claims under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §12101 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*; California's unfair competition law; and state law tort claims. (ECF No. 1.) On June 26, 2017, Defendant AICSD informed Plaintiff in writing of its election to resolve the dispute in arbitration pursuant to the arbitration provisions of the Enrollment Agreement. (ECF No. 8-4 Ex. B.) Defendants EMC and AICSD have moved to compel Esquer to submit his claims in this action to arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.* (ECF No. 8.) They request that the Court either dismiss the action in its entirety or stay it pending arbitration. (*Id.*)

## II. LEGAL STANDARD

The FAA applies to contracts that evidence transactions involving interstate commerce. 9 U.S.C. §§1, 2. The FAA provides that contractual arbitration

agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The "primary" purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "[A] district court has little discretion to deny an arbitration motion" once it determines that a claim is covered by a written and enforceable arbitration agreement. *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). Arbitration agreements, "[l]ike other contracts . . . may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute[.]" *Marriot Ownership Resorts, Inc. v. Flynn*, No. 14-00372 JMS-RLP, 2014 WL 7076827, at *6 (D. Haw. Dec. 11, 2014). Instead, a district court's determinations are limited to (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### III. DISCUSSION

In the instant motion, Defendants seek to compel arbitration pursuant to the arbitration provisions of the Enrollment Agreement. Defendants argue that the question of arbitrability has been delegated to the arbitrator and thus the scope of this Court's review is narrow. Plaintiff argues that the agreement's delegation clause is unenforceable and that, even if it is enforceable, certain claims are outside the scope of the arbitration provisions.

### A. The Parties Clearly and Unmistakably Delegated Arbitrability

A threshold issue the Court must decide is whether the Enrollment Agreement delegated the arbitrability determination to the arbitrator. The determination of whether an arbitration clause is valid, applicable, and enforceable is reserved to the district court unless "the parties clearly and unmistakably provide[d] otherwise," such as by delegating the issue of arbitrability to arbitration. *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Even if a delegation of arbitrability is clear and unmistakable it may be found unenforceable if the delegation itself is unconscionable. *Rent-A-Ctr.,* 561 U.S. at 71−74.

Defendants argue that the delegation provision requires that any dispute pertaining to arbitrability must be submitted to the arbitrator. (ECF No. 8-1 at 13.) Defendants argue the parties have shown a clear and unmistakable intent to delegate the question of arbitrability to the arbitrator because (1) the arbitration provision requires the arbitration of "any dispute or claim," (*id.* (citing Antun. Decl. Ex.1 at 2)), and (2) the agreement incorporates the JAMS procedural rules, which in turn provide JAMS with the authority to determine jurisdiction and arbitrability. Plaintiff disputes delegation on the grounds that (1) the arbitration agreement does not expressly state that the arbitrator has the power to determine arbitrability and (2) the arbitration agreement merely references the requirement to initiate proceedings with JAMS, not JAMS's procedural rule regarding its jurisdiction over arbitrability.

The delegation clause of the arbitration agreement here states that upon initiation of arbitration JAMS "will serve as the arbitration administrator *pursuant to its rules of procedure*." (*Id.* at 2 (emphasis added).) There appears to be a dispute between the parties as to which JAMS rules of procedures apply. Whereas Defendants point to Rule 8(b) of the JAMS Streamlined Arbitration Rules & Procedures, Plaintiff points to Rule 11 of the JAMS Comprehensive Arbitration

Rules & Procedures.[1]  The Court need not decide which set of rules is appropriate under the arbitration agreement's delegation clause because both sets of Rules contain an identical clause authorizing JAMS to determine jurisdiction and arbitrability.

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitration.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*Compare* Rule 11(b), JAMS Comprehensive Arbitration Rules & Procedures *with* Rule 8(b) JAMS Streamlined Arbitration Rules & Procedures.

In the context of another arbitrator, the Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  Contrary to Plaintiff's argument that there is no clear and unmistakable evidence because arbitrability is not expressly referenced in the agreement, *Brennan* held that incorporation of an arbitrator's rules is such evidence. *Id.* at 1131; *see also Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *6 (N.D. Cal. Mar. 18, 2016) (collecting cases holding that incorporation of arbitrator rules manifests clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability).

Several courts in this Circuit have determined that *Brennan*'s scope is limited to delegation clauses in cases involving sophisticated parties. *See, e.g., Ingalls v.*

---

[1] The main difference between these sets of rules is whether the claims exceed $250,000.00 or not, with the streamlined rules applying to claims that do not exceed this amount.  *Compare* Rule 1(a), JAMS Comprehensive Arbitration Rules & Procedures *with* Rule 1(a) JAMS Streamlined Arbitration Rules & Procedures.

*Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) (finding that "the parties, which included two ordinary consumers who could not be expected to appreciate the significance of incorporation of the AAA rules, did not clearly and unmistakably intend to delegate the issue of arbitration to an arbitrator"); *Galilea, LLC v. AGCS Marine Ins. Co.*, No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *3 (D. Mont. April 5, 2016); *Meadows v Dickey's Barbecue Restaurants, Inc.*, 144 F. Supp. 3d 1069, 1078-79 (N.D. Cal. 2015). These courts have emphasized that "an inexperienced individual untrained in the law" is less likely to be reasonably expected to understand the incorporation of arbitrator rules into an arbitration agreement. *See, e.g., Galilea, LLC v. AGCS Marine Ins. Co.*, No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *3 (D. Mont. April 5, 2016).

Other courts in this Circuit, however, have found that incorporation of an arbitrator's procedural rules into an arbitration agreement constitutes a clear delegation of arbitrability without regard to a party's sophistication. *See, e.g., McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2−3 (N.D Cal. Oct. 11, 2017); *Ortiz v. Volt Mgmt. Corp.*, No. 16-cv-07096-YGR, 2017 WL 1957072, at *2 (N.D. Cal. May 11, 2017); *Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) ("Nearly every decision in the Northern District of California has consistently found effective delegation of arbitrability regardless of the sophistication of the parties" (internal quotations omitted); *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. 2016). *Brennan* expressly cautioned that its holding does not "foreclose the possibility that this rule could also apply to unsophisticated parties," observing that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so *without explicitly limiting that holding to sophisticated parties*." 796 F.3d at 1130−31 (emphasis added). The Court agrees with these latter authorities. The Court is mindful of the concerns reflected by several courts about whether an unsophisticated

party can clearly and unmistakably intend to delegate arbitrability based on incorporation of an arbitrator's rules. It may be that certain contracts or agreements are so complicated that it is not reasonable to find a clear and unmistakable intent between the parties to delegate where one party is unsophisticated. *See, e.g., Meadows*, 144 F. Supp. 3d at 1078−79. However, *Brennan* does not compel a court to inquire into a party's sophistication to find clear and unmistakable intent.[2]

The Court need not look beyond the two-page Enrollment Agreement's terms to find the requisite intent to delegate in this case. *Han v. Synergy Homecare Franchising LLC*, ("When the contractual language is clear, there is no need to consider extrinsic evidence of the parties' intentions; the clear language of the agreement governs." (quoting *Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1004 (Cal. App. 1975)); *cf. Anderson v. Pitney Bowes, Inc.*, No. 04-cv-4808 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005) ("one need not reference extrinsic materials" where an arbitration clause "facially gives an arbitrator the exclusive authority to determine his or her own jurisdiction"). The arbitration agreement, which is part of the Enrollment Agreement that both Defendant AICSD and Plaintiff signed[3], incorporates the JAMS's procedural rules into the arbitration agreement,

---

[2] Moreover, such an inquiry may be better suited to a court's determination of whether a delegation clause is unenforceable because it is unconscionable. Courts take into account a party's sophistication when assessing unconscionability. *See, e.g., Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621, 633 (Cal. Ct. App. 2014) (finding clear and unmistakable intent to delegate, but also finding procedural unconscionability where plaintiff was "an unsophisticated party who was presented" with an arbitration agreement containing a delegation clause); *see also Pinela v. Neiman Marcus Grp., Inc.*, 190 Cal. Rptr. 3d 159, 173 (Cal. Ct. App. 2015) (finding procedural unconscionability where it was "less likely" an "unsophisticated layperson" like the plaintiff "would understand how arbitrability questions are to be resolved under the agreement.").

[3] Plaintiff concedes that the copy of the Enrollment Agreement Defendants submitted in support of their motion to compel is a true copy of the agreement he signed. (ECF No. 10 at 6.)

which provide JAMS with authority to determine arbitrability. Moreover, the arbitration provision explicitly provides that "any dispute or claim between the student and The Art Institute (or any company affiliated with The Art Institute . . .) arising out of or relating to a student's enrollment or attendance" regardless of when the dispute arises must go to arbitration. (Antun Decl. Ex. 1.) Accordingly, the Court finds that the parties have clearly and unmistakably delegated the question of arbitrability.

### B. The Delegation Clause is Not Unconscionable

Plaintiff contends that the arbitration agreement's provisions, including its delegation clause, are nevertheless unenforceable because they are unconscionable. Defendants argue that this Court should not address unconscionability in light of the delegation of arbitrability, but that even if the Court considers the argument, it fails.

The Court rejects Defendants' argument that the Court should not address unconscionability. Although a court must enforce an agreement where arbitrability has been delegated, enforcement is only proper "in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability." *See Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1209 (9th Cir. 2016); *see also Brennan*, 796 F.3d at 1132 ("Because a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability . . ., the only remaining question is whether the particular agreement to delegate arbitrability—the Delegation Provision—is itself unconscionable."). Accordingly, the Court will assess the unconscionability of the delegation, considering only arguments "specific to the delegation provision." *Rent-a-Ctr.*, 561 U.S. at 73.

#### 1. California Law on Unconscionability

The parties concede that the Court should apply California law to assess whether the delegation clause is unconscionable. (ECF Nos. 10, 11.) Under California law, unconscionable contracts are those that are "so one-sided as to shock the conscience." *Baltazar v. Forever 21, Inc*., 367 P.3d 6, 11 (Cal. 2016). Finding

that a contract is unenforceable on grounds of unconscionability requires a substantial degree of unfairness beyond "a simple old-fashioned bad bargain." *Id.* "Unconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Mohamed*, 848 F.3d at 1210 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000), *abrogated on other grounds*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)). Both procedural and substantive unconscionability must be present in order for a court to find a contract unconscionable, but "they need not be present in the same degree." *Id.* at 1210. Plaintiff argues that both elements are present.

### 2. Procedural Unconscionability

Procedural unconscionability focuses on "oppression" or "surprise." "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381 (Cal. Ct. App. 2001).

Plaintiff contends that the arbitration provisions are procedurally unconscionable because (1) the Enrollment Agreement is an adhesion contract, (2) the Enrollment Agreement gives no indication on its face that a student is giving up certain rights, such as the right to a jury trial, and (3) the methodology by which AICSD secured the Plaintiff's signature was problematic in light of the student-educator relationship here. (ECF No. 10 at 8-9.) These arguments are no less applicable to the delegation clause of the arbitration agreement because Plaintiff has specifically argued that the "arbitration provisions" are procedurally unconscionable on these grounds.

#### a. Plaintiff Has Shown Oppression

The Court considers Plaintiff's first and third procedural unconscionability

arguments as arguments about oppression. "The threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006). A contract of adhesion is defined as a "standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores*, 113 Cal. Rptr. 2d at 382. A finding that a contract is one of adhesion is essentially a finding of procedural unconscionability. *Id.* This is because when the weaker party is presented with a clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present. *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Cal. Ct. App. 2002). However, the fact that a contract is adhesive is insufficient by itself to render an arbitration clause unenforceable. *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012).

The Court agrees that the Enrollment Agreement, which includes the delegation clause, is a contract of adhesion. The Enrollment Agreement is a standard form contract presented to all individuals wishing to enroll at AICSD. The Enrollment Agreement, and the arbitration provisions it includes, was prepared by AICSD and presented to Plaintiff as a condition of enrolling or attending AICSD. There is no indication that Plaintiff had any "equality of bargaining power" with AICSD so that he could negotiate the terms of the Enrollment Agreement, including the inclusion of the delegation clause. For these reasons, Plaintiff's challenge to the delegation clause as unconscionable on the ground that it is part of an adhesion contract has merit. *See Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621, 633 (Cal. Ct. App. 2014) ("For the same reasons that we conclude the delegation clause is part of a contract of adhesion . . . [it] is procedurally unconscionable."). Even so, use of an adhesion contract establishes only some degree of procedural unconscionability and is not itself a ground for finding that a contract, or one of its provisions, is unenforceable. *See Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (Cal.

2015).

### b. Plaintiff Has Shown Surprise

The Court deems Plaintiff's second argument as an argument about unfair surprise and agrees there is some surprise. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the printed terms." *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 122 (Cal. Ct. App. 1982); *see also Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003) (same). The element of surprise must be balanced against the fact that a party is not under an obligation to highlight an arbitration agreement, including the delegation clause, nor is it required to specifically call that clause to a plaintiff's attention. *See Sanchez*, 353 P.3d at 751. The arbitration agreement provisions, including the delegation clause, were contained on the second page of the Enrollment Agreement. (Antun Decl. Ex. 1.)

Although the front page states that both "sides of this Agreement . . . constitute the entire Enrollment Agreement," the font of the text is extremely small. The text of the arbitration provisions, although generally in the same font as all the non-arbitration provisions and appearing under the bolded phrase "Arbitration," is in an extremely small font. (*Id.* at 2.) Although one provision of the arbitration agreement is in all capital letters, it is hard to imagine how an individual would notice the arbitration provisions that are otherwise undifferentiated from the rest of the provisions contained on the page. It is even less likely that an unsophisticated layperson like Esquer would understand the significance of the delegation clause. *See, e.g., Pinela*, 190 Cal. Rptr. 3d at 173; *Tiri*, 171 Cal. Rptr. 3d at 633. Indeed, Esquer suggests that he was not aware of any arbitration provisions contained in the Enrollment Agreement when he signed it, which demonstrates a degree of actual surprise. *See, e.g., Newton*, 854 F. Supp. 2d at 724. Based on these facts, the Court finds that there is an element of surprise as to the arbitration provisions in the Enrollment Agreement. Esquer has shown procedural unconscionability.

### 3. Substantive Unconscionability

Plaintiff contends that the Enrollment Agreement and its arbitration provisions are substantively unconscionable because (1) the proposed arbitrator is compromised by virtue of its interest and (2) Plaintiff faces the risk of paying arbitration-related fees and costs not required in a judicial proceeding. (ECF No. 10 at 9.) The substantive unconscionability inquiry focuses on "the effects of the contractual terms and whether they are overly harsh or one-sided." *Flores*, 113 Cal. Rptr. 2d at 381. The Court construes the argument about bias as equally applicable to the delegation clause. Plaintiff's argument about the fees and costs provisions bears little relation to the delegation clause, but even considering it, the argument is unavailing.

#### a. Plaintiff Fails to Show Arbitrator Bias

Plaintiff argues that the arbitration provisions are unenforceable because the proposed arbitrator is biased. Plaintiff argues that Defendants repeatedly appear before JAMS and has submitted a document purporting to demonstrate the frequency and familiarity of interactions between Defendants and JAMS. (ECF No. 10 Ex. 1.) Plaintiff asserts the so-called "repeat player effect," by which an arbitrator seeks to cultivate further business from a party repeatedly appearing before it, may be taken into account by this Court in deciding whether the arbitration agreement is substantively unconscionable. (ECF No. 10 at 10.) Although the Court agrees bias is relevant to the unconscionability inquiry, the Court finds Plaintiff's bias argument in this case unpersuasive.

Although the Supreme Court of California has taken notice of the "repeat player effect," the court has never declared that such an effect renders an arbitration agreement *per se* unconscionable. *See Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 679 (Cal. Ct. App. 2002). Merely raising a claim of bias, without presenting more particularized evidence demonstrating lack of impartiality, is insufficient under California law to support an unconscionability finding. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (citing *McManus v. CIBC World Mkts.*

*Corp.*, 134 Cal. Rptr. 2d 446 (Cal. Ct, App. 2003)). Plaintiff has failed to provide particularized evidence showing actual bias. The fact that the Defendants appear before JAMS with some degree of frequency is insufficient to find bias that warrants invalidation of the arbitration provisions. To the extent Plaintiff was legitimately concerned about arbitrator bias, the arbitration agreement "does not preclude the parties from mutually agreeing to an alternative arbitration forum or administrator. . . ." (Antun Decl. Ex. 1.) In anticipation of the Court's inevitable reference to this provision, Plaintiff argues that this provision is "illusory" in light of its "mutual agreement" requirement because Defendants and JAMS have no desire to initiate such proceedings. Plaintiff's argument is belied by other evidence. Plaintiff was required to propose an alternate forum or administrator within twenty days of receipt of Defendants' intent to arbitrate. (Antun Decl. Ex. 1 at 2.) Upon electing arbitration in writing, Defendants expressly informed Plaintiff of his right under the arbitration agreement to propose an alternative arbitrator and expressly identified their amenability to use of AAA as an arbitrator, instead of JAMS. (ECF No. 8-4 Ex. B.) There is no indication Plaintiff in fact proposed a different arbitrator.

### b. The Fee and Cost Provisions Are Not Unconscionable

Plaintiff also argues that arbitration provisions are substantively unconscionable because Plaintiff faces the risk of having to pay arbitration-related fees and costs not required in court. This argument is insufficient to invalidate the delegation clause of this arbitration agreement because that provision is not sufficiently connected to the delegation clause. This alone would doom finding that the delegation provision is substantively unconscionable. *See Rent-a-Ctr.*, 561 U.S. at 73 (court's analysis is limited to challenges specific to delegation clause).

Even assuming there is a sufficient connection, Plaintiff advances nothing more than mere speculation about the fees and costs of arbitration. "The 'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-Ala. v. Randolph*,

531 U.S. 79, 90−91 (2000); *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (finding risk of prohibitive costs insufficient when there "was nothing else in the arbitration clause in the note suggest[ing] substantive unconscionability"). A fee provision cannot be deemed unconscionable absent a showing that the "fees and costs in fact would be unaffordable or would have a substantial deterrent effect." *Sanchez v. Valencia Holding, LLC*, 353 P.3d at 755. As to the arbitration filing fee, the JAMS fee is in fact less than the fee Plaintiff paid to file his case in this Court. (*Compare* ECF No. 8-6 *with* ECF No 4.) Plaintiff can even elect that AICSD pay up to $3,500 in filing fees per claim. All other costs identified in the arbitration agreement – attorney, expert and witness fees – are costs incurred in judicial proceedings. Moreover, the arbitration agreement here follows the general rule applicable in judicial proceedings that a party generally bears its own litigation costs and even permits fee-shifting under applicable law. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). The Court sees no taint of substantive unconscionability in the fee and cost provisions here, which on their face do not impose any costs on Plaintiff that he would not incur before this Court. *Cf. Armendariz*, 6 P.3d at 687.

### 4. Plaintiff Has Not Proven the Delegation Clause is Unenforceable

Although Plaintiff has shown some degree of procedural unconscionability as to the delegation provision, he has failed establish that the provision is substantively unconscionable. Because California law requires a showing of both types of unconscionability, *Mohamed*, 848 F.3d at 1210; *Armendariz*, 6. P3d at 690, Plaintiff has failed to meet his burden to show that the delegation clause is unenforceable. Accordingly, the Court will enforce the delegation provision.

### C. Defendants' Demand for Arbitration is not "Wholly Groundless"

The arbitration provision of the Enrollment Agreement provides that it applies to "any dispute or claim between the student and The Art Institute . . . arising out of

or relating to the student's enrollment or attendance at" AICSD, including claims against "any company affiliated" with AICSD. (Antun Decl. Ex. 1.) Notwithstanding this broad language, Plaintiff argues that Defendants' demand for arbitration does not reach his claim that Defendants intentionally and publicly disclosed his private personal facts. (ECF No. 10 at 11.) Plaintiff's argument does not have merit. As confirmed by the allegations in the Complaint, this entire dispute, including Plaintiff's claim concerning alleged disclosure of his private personal facts during classes at AICSD, arises from or relates to Plaintiff's enrollment and attendance at AICSD. Thus, the entire dispute directly "touches" the subject matter of the Enrollment Agreement and is subject to arbitration. *See Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (the phrase "arising out of or relating to" in an arbitration agreement must be construed broadly, and the factual allegations at issue "need only touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitration."); *see also Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 955 (N.D. Cal. 2015).

### D. Defendants' Request to Dismiss or Stay the Case

As part of their motion to compel arbitration, Defendants moved for dismissal or a stay of the case pending arbitration. Under the FAA, a court may stay the trial of an action pending arbitration when it is satisfied that the issues in dispute are referable to arbitration under the parties' arbitration agreement. *See* 9 U.S.C. § 3. Here, the Court has found that arbitrability of the claims, and possible arbitration, is referable pursuant to the arbitration agreement. Accordingly, this action is stayed pursuant to 9 U.S.C. § 3.

## IV. CONCLUSION & ORDER

Accordingly, the Court **HEREBY ORDERS**:

1. Defendants' motion to compel arbitration (ECF No. 8) is **GRANTED**.
2. The action is **STAYED** as to all parties and all claims. *See* 9 U.S.C. §3.
3. The Court further **ORDERS** the parties to proceed to JAMS for a

determination of arbitrability and possible arbitration in the manner provided for in the Enrollment Agreement's arbitration provisions. *See* 9 U.S.C. §4.

4. The Court directs the Clerk of the Court to **ADMINISTRATIVELY CLOSE** this action; the decision to administratively close this action pending the resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing" because "administratively closing. . . has no jurisdictional effect.").

**IT IS SO ORDERED.**

DATED: November 8, 2017

Hon. Cynthia Bashant
United States District Judge